

TAX EXEMPT AND
GOVERNMENT ENTITIES
DIVISION

**DEPARTMENT OF THE TREASURY**
INTERNAL REVENUE SERVICE
WASHINGTON, D C 20224

Date
DEC 13 2001

Daniel A Dzina
8640 Brecksville Rd
Brecksville, Ohio 44141

Social Security or Employer
Identification Number
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
Person to Contact/ID #
 Augusta Simpson/36-08149
Contact Telephone Number
 (312) 566-3908
Taxpayer Advocate's Office and
Telephone Number
 1240 E Ninth st, room 423
 Cleveland, Ohio 44199
 (216) 522-7134

Last Day to File Petition with the
United States Tax Court

MAR 13 2002

## CERTIFIED MAIL

| Tax Year(s) Ended | First Tier (Initial) Tax Deficiency | Second Tier (Additional) Tax Deficiency | Additions to the Tax |
|---|---|---|---|
| December 31, 1995 | $259 28 | 1,481 58 | 0 |
| December 31, 1996 | $95,819 01 | $547,537 16 | 0 |
| December 31, 1997 | $10,442 33 | $59,670 44 | 0 |

Dear Sir or Madam

We have determined that there is a deficiency (increase) in your income tax as shown above
This letter is a NOTICE OF DEFICIENCY sent to you as required by law   The enclosed
statement shows how we figured the deficiency

The second tier tax deficiency shown above will be eliminated if correction is made by the end
of the correction period, which ends 90 days after the mailing of this letter plus the total period
of any extensions that may apply   You may request this office to grant an extension of the
correction period for the time reasonable and necessary for you to bring about correction of the
act giving rise to the first tier tax   However, an extension can be granted only if warranted by
the facts and requested before the correction period would otherwise end   A statement as to the
actions required for corrections is enclosed

1100 Commerce Street  Dallas, TX 75242

U S EXH 1

In lieu of
Letter 1753(DO)



If you want to contest this deficiency in court before making any payment, you must file a petition with the United States Tax Court for a redetermination of the deficiency Your petition must be filed with the Court within 90 days from the mailing date of this letter (150 days if addressed to you outside of the United States), plus time (if any) during which this office has extendduring which this office has extended the correction period as result of your request The petition should be filed with the United States Tax Court, 400 Second Street NW, Washington, D C 20217, and the copy of this letter should be attached to your petition Filing a petition will extend the correction period until after the Tax Court has decided whether the second tier tax was properly imposed

If your petition involves a dispute of not more than $50,000 for any one taxable period (or, if there is no taxable period, taxable event), a simplified procedure is provided by the Tax Court for small tax cases You can get information about this procedure, as well as a petition form youThe time in which you must file a petition with the Court (90 or 150 days, as the case may be, plus any extension of the correction period that may be granted) is fixed by law and the Court cannot consider your case if your petition is filed late can use, by writing to the Clerk of the United States Tax Court at 400 Second Street NW, Washington, D C 20217 You should do this promptly if you intend to file a petition with the Tax Court

You may represent yourself before the Tax Court, or you may be represented by anyone admitted to practice before the Court If you decide not to file a petition with the Tax Court, please sign and return the enclosed waiver form This will permit us to assess the deficiency quickly and will limit the accumulation of interest The enclosed envelope is for your convenience If you decide not to sign and return the statement and you do not timely petition the Tax Court, the law requires us to assess and bill you for the deficiency after 90 days from the mailing date of this letter (150 days if this letter is addressed to you outside the United States) The time for making the assessment is extended by any extension of the correction period that may be granted

If you have any questions about this letter, please write to the person whose name and address are shown on this letter If you write, please attach this letter to help identify your account Keep the copy for your records Also, please include your telephone number and the most convenient time for us to call, so we can contact you if we need additional information

I. you i efer, you may call the IRS contact person at the telephone number shown above If this i umbei is outside your local calling areas, there will be a long distance charge to you

You may call the IRS telephone number listed in your local diectory An IRS employee there may be able to help you, but the contact person at the address shown on this letter is most familiar with your case You may also call the Internal Revenue Service Taxpayer Advocate for assistance at the address or telephone number shown on ce Notice 1214

1100 Commerce Street Dallas, TX 75242

In lieu of
Letter 1753(DO)

 Thank you for your cooperation

                                                            Sincerely yours,

                                                           Charles O Rossotti
                                                           Commissioner

                                                           By
                                                           R C Johnson
                                                           Director, EO Examinations

Enclosures
Report of Examination
Copy of this letter
Waiver
Notice 1214
Publication 594

1100 Commerce Street Dallas, TX 75242                                      In lieu of
                                                                                            Letter 1753(DO)



| Form **4089** (Rev January 1983) | Department of the Treasury — Internal Revenue Service **Notice of Deficiency-Waiver** | Symbols 4929CHI  Simpson |
|---|---|---|

Name SSN or EIN, and address of Taxpayer(s)

Daniel A. Dzina
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
8640 Brecksville Rd.
Brecksville, Ohio 44141

| Kind of Tax Excise | [X] Copy to Authorized Representative |
|---|---|

| Tax Year Ended | Deficiency | |
|---|---|---|
| | Increase in Tax | Penalties |
| December 31, 1995 | $1,740.86 | 0 |
| December 31, 1996 | $643,356.17 | 0 |
| December 31, 1997 | $70,112.77 | 0 |

**See the attached explanation for the above deficiencies**

I consent to the immediate assessment and collection of the deficiencies (increase in tax and penalties) shown above plus any interest provided by law

Your Signature ▶ _____ (Date signed)

Spouse's Signature, If A Joint Return Was Filed ▶ _____ (Date signed)

Taxpayer's Representative Sign Here ▶ _____ (Date signed)

Corporate Name _____

Corporate Officers Sign Here ▶ (Signature) _____ (Title) _____ (Date signed)
▶ (Signature) _____ (Title) _____ (Date signed)

**Note**

If you consent to the assessment of the amounts shown in this waiver please sign and return it in order to limit the accumulation of interest and expedite our bill to you  Your consent will not prevent you from filing a claim for refund (after you have paid the tax) if you later believe you are entitled to a refund  It will not prevent us from later determining if necessary that you owe additional tax  nor will it extend the time provided by law for either action

If you later file a claim and the Internal Revenue Service disallows it  you may file suit for refund in a district court or in the United States Claims Court  but you may not file a petition with the United States Tax Court

**Who Must Sign**

If this waiver is for any year(s) for which you filed a joint return  both you and your spouse must sign the original and duplicate of this form  Sign your name exactly as it appears on the return  If you are acting under power of attorney for your spouse  you may sign as agent for him or her

For an agent or attorney acting under a power of attorney  a power of attorney must be sent with this form if not previously filed

For a person acting in a fiduciary capacity (executor administrator  trustee) file Form 56  Notice Concerning Fiduciary Relationship with this form if not previously filed

For a corporation  enter the name of the corporation followed by the signature and title of the officer(s) authorized to sign

**If you agree  please sign one copy and return it  keep the other copy for your records**

Cat No 22650Y       www irs gov       Form **4089** (Rev 1 1983)



| Form **4089** (Rev January 1983) | Department of the Treasury — Internal Revenue Service **Notice of Deficiency-Waiver** | Symbols 4929CHI Simpson |
|---|---|---|

Name SSN or EIN and address of Taxpayer(s)

Daniel A. Dzina
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
8640 Brecksville Rd.
Brecksville, Ohio 44141

| Kind of Tax Excise | [X] Copy to Authorized Representative |
|---|---|

| Tax Year Ended | Deficiency | |
|---|---|---|
| | Increase in Tax | Penalties |
| December 31, 1995 | $1,740.86 | 0 |
| December 31, 1996 | $643,356.17 | 0 |
| December 31, 1997 | $70,112.77 | 0 |

**See the attached explanation for the above deficiencies**

I consent to the immediate assessment and collection of the deficiencies (increase in tax and penalties) shown above plus any interest provided by law

Your Signature ▶ _____ (Date signed)

Spouse's Signature, If A Joint Return Was Filed ▶ _____ (Date signed)

Taxpayer's Representative Sign Here ▶ _____ (Date signed)

Corporate Name _____

Corporate Officers Sign Here
▶ _____ (Signature) _____ (Title) _____ (Date signed)
▶ _____ (Signature) _____ (Title) _____ (Date signed)

**Note**

If you consent to the assessment of the amounts shown in this waiver please sign and return it in order to limit the accumulation of interest and expedite our bill to you Your consent will not prevent you from filing a claim for refund (after you have paid the tax) if you later believe you are entitled to a refund It will not prevent us from later determining if necessary that you owe additional tax nor will it extend the time provided by law for either action

If you later file a claim and the Internal Revenue Service disallows it you may file suit for refund in a district court or in the United States Claims Court but you may not file a petition with the United States Tax Court

**Who Must Sign**

If this waiver is for any year(s) for which you filed a joint return both you and your spouse must sign the original and duplicate of this form Sign your name exactly as it appears on the return If you are acting under power of attorney for your spouse you may sign as agent for him or her

For an agent or attorney acting under a power of attorney a power of attorney must be sent with this form if not previously filed

For a person acting in a fiduciary capacity (executor administrator or trustee) file Form 56 Notice Concerning Fiduciary Relationship with this form if not previously filed

For a corporation enter the name of the corporation followed by the signature and title of the officer(s) authorized to sign

If you agree please sign one copy and return it keep the other copy for your records

Cat No 22650Y  www irs gov  Form **4089** (Rev 1 1983)



## REPORT OF EXAMINATION-EXEMPT ORGANIZATIONS     Page 1 of 2

| 1  Form Number 4720 | 2  Key District Office  Great Lakes | 3  Date of Report |
|---|---|---|
| 4  Name and Address of Taxpayer<br>Daniel A Dzina<br>8640 Brecksville Rd<br>Brecksville, Ohio 44141 | 5  Name and Address of Private Foundation | |

| 6  Social Security or Employer Identification No<br>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 | 7  Tax Period(s)<br>9512, 9612, &<br>9712 | 8  Private Foundation Employer Identification No | 9  Tax Period(s) |
|---|---|---|---|
| 10  Report Preparer's Name Philip J Albaugh | | 11  Agreement Secured<br>No | |
| 12  Findings Discussed With<br>E Roger Stewart/Representative | | 13  Agreement Date | |

14(a)  Summary of Proposed Adjustments | 14(b) Penalty

| Internal Revenue Code Section | Period Covered by Examination | Amount of Tax | Additional Tax (Private Foundation) | Internal Revenue Code Section | Amount |
|---|---|---|---|---|---|
| 4958 | 12/31/95 | $1,740 86 | | | |
| 4958 | 12/31/96 | $643,356 17 | | | |
| 4958 | 12/31/97 | $70,112 77 | | | |
| | | | | | |
| | | | | | |

Section 4958(c)(1)(A) of the Code provides that an excess benefit transaction is any transaction in which an economic benefit is provided by an applicable tax exempt organization, directly or indirectly, to or for use of any disqualified persons

As the First Vice-President and Executive Director, Mr Daniel Dzina was in a position to exercise substantial influence over the affairs of Cleveland Golden Gloves (CGG) Therefore, Mr Daniel Dzina was a disqualified person with respect to CGG within the meaning of section 4958(f)(1)(A) of the Code  Also as the First Vice-President and Executive Director, Mr Daniel Dzina was an organization manager within the meaning of section 4958(f)(2) of the Code  On January 12, 1995 CGG entered into a Land Installment Contract and on June 1, 1996 entered into Restated Land Contract with Northpoint Athletic Club II, Inc  a Subchapter S Corporation solely owned by Daniel Dzina
The land contract was related to property located at 18909 South Miles in Warrensville Heights, Ohio, which was purchased by Northpoint Athletic

15  Schedules and Exhibits Attached



Form 4621                                                                                       Department of the Treasury - Internal Revenue Service

Club II on December 30, 1993 for $435,000 and sold by Northpoint Athletic Club II on July 23, 1997 for $2,154,000 to the Cleveland Sportsplex, LTD, after substantial capital improvements and repairs, some of which were paid by CGG funds   CGG defaulted on the Land Contract, and all renovations completed by CGG reverted back to Northpoint Athletic Club II upon the default of the land contract

The transactions between Daniel Dzina's Northpoint Athletic Club II Sub-S Corporation and CGG were not ARMS-LENGTH TRANSACTIONS AND WERE NOT FAIR MARKET VALUE TRANSACTIONS  Daniel Dzina set up a land contract that CGG could in no way fulfill  The contract was written so that all renovations completed by CGG would revert to Northpoint upon the default of the land contract  Daniel Dzina, as sole shareholder of Northpoint, was the only person who received an economic benefit from the improvement of his buildin  The CGG were spending its monies in 1995-1997 on improving the building and therefore they did not have enough funds to operate

Dzina and Northpoint were giving CGG money to operate and then taking these "donations" as tax deductions  The CGG wouldn't have needed additional fund if they weren't renovating a building that belonged to Daniel Dzina, who had control of both the CGG and Northpoint Athletic Club II, Inc  The Exces Business Transactions were the improvements and repairs to Daniel Dzina's (the disqualified person & foundation manager) property

The organization's representatives believe that there are no excess business transactions because the new owner of the property located on 18909 South Miles Road in Warrensville Heights, Ohio tore down the renovations that were made by CGG on Daniel Dzina's (Northpoint Athletic Club II Inc ) property  As a result they feel that there was no economic benefit to Daniel Dznia   The Service disagree with this statement because Northpoint Athletic Club II, Inc , Daniel Dzina's corporation, purchased the property located at 18909 South Miles in Warrensville Heights for $435,000 on December 31, 1993, and sold this same property on July 23, 1997 for $2,154,000  The property was sold at a substantial gain of $1,719,000 in less than three years

Apparently there must have been capital improvements (renovations) done on this building to increase the building's value by 80%  Because the DP declines to sign the consent, the technical advice request could not proceed   Because the statute for the years on December 31, 1996 & 1997 expires on December 31, 2001, the agent has done a statutory notice

---

15  Schedules and Exhibits Attached

---

Form 4621         Department of the Treasury  Internal Revenue Service



# Daniel A. Dzina

### Calendar Years
### 1995, 1996, 1997

## *FACTS*

The Cleveland Golden Gloves Association, Inc (hereinafter referred to as CGG) is a tax exempt entity that is exempt under Internal Revenue Code section 501(c)(3) They received exempt status from the Internal Revenue Service on October 20, 1986 The organization s exempt purpose was to provide youth boxing. They were affiliated with a National Organization and held the National boxing championships in Cleveland in 1996 They held Amateur Boxing Tournaments up to March of 1998 for both a Junior Olympics class which was for youths under the age of 18, and an Open Division Weight Class for men between the ages of 17 and 32

In 1993 Anthony Hughes, who was on the Board of Trustees, introduced a man named Daniel Dzina to the Board He quickly became one of the four Trustees of the organization Mr Dzina was an officer & Executive Director from 1994 through 1997 Mr Dzina was also the owner of a Subchapter S Corporation called Northpoint Athletic Club II, Inc

Below is a list of the events that occurred in the order that they occurred

*December 30, 1993* – Northpoint Athletic Club II, Inc purchased property located at 18909 South Miles in Warrensville Heights. The purchase price of the property was $435,000

*December 12, 1994 and December 30, 1994* - Board Meetings were allegedly held on December 12 1994 and December 30, 1994 to approve the purchase of the above property They also approved making Dan Dzina Executive Director in addition to his current duties of 1st Vice President

They authorized Dzina to research obtaining a bingo license Minutes attached to the land contract showing its ratification differed from minutes that were attached to their 1995 Bingo Application We received a copy of the Bingo Application from the State of Ohio A bingo application must be signed and notarized All information is submitted under penalties of perjury These minutes stated that the following people were at the December 12 1994 meeting

        Anthony Hughes President
        Daniel Dzina, First Vice President
        Ronald A. Stackhouse, Recording Secretary
        Fred Kovacs Nominee Financial Secretary/Treasurer
        Clytee Dunn
        Dick Acton
        Dick Stewart

The minutes attached to the land contract showed that only the Officers were present and the contract was ratified on their votes only Both sets of minutes were signed by Ronald Stackhouse who was the Recording Secretary

Other information on the b⟨…⟩ r penalties of perjury) stated that they owned the building located at 18909 South Mi⟨…⟩ 1995 199⟨…⟩ and 1997

*January 12 1995* – CGG entered into a Land Installment Contract with Northpoint Athletic Club II, Inc a Subchapter S Corporation solely owned by Dan Dzina Dzina was also 1st Vice President and Executive Director of CGG This land contract was signed by Dan Dzina as the owner of Northpoint (he was also the 1st Vice President and Executive Director of CGG at the time) and Anthony Hughes the President of CGG It was witnessed and notarized Land contracts do not have to be filed in the State of Ohio

Daniel A Dzina                                                                                                                                                                                    Page 1



The total price of the property (per the contract) was $2,000,000 The land contract purchase price would be payable in one hundred and twenty consecutive, equal, monthly installment payments of $24,931 04 each commencing June 1, 1995 and continuing thereafter on the first day of each and every calendar month through and including May 1, 2005

Yearly gross income from the organization's 1993 and 1994 Forms 990 (which are open to public inspection) was $32 287 and $21,515, respectively

The total square footage of the property was 127,000

The following information is set forth in the land contract

> The parties acknowledge that Buyer was granted possession of the premises on December 15 1994 in order to commence renovation of the premises Buyer agrees to bear the entire cost and expense of the renovations in lieu of providing Seller with a down payment on the purchase price and in consideration of Seller granting Buyer possession of the premises without payment of rent, taxes or insurance until June 1 1995 Should Buyer default hereunder and the Seller be required to exercise any of its rights under Paragraph 17 below, Buyer shall lose its interest in said renovations as and for liquidated damages

Section 17 of the Land Contract basically states that if the Buyer defaults or if the Seller demands full payment of the balance due at any time during the contract and the Buyer is unable to pay the following would occur

> The Seller shall be released from all obligations in law or equity to convey the premises to Buyer,
>
> Buyer shall forfeit all rights to the premises or to the possession thereof
>
> Seller shall have immediate right to retake possession of said property and
>
> Payments theretofore made by Buyer pursuant to this Contract shall be credited by Seller to the reasonable rental value of the premises during the period Buyer had the use and occupancy of the premises

*February, 1995* - CGG held its preliminary bouts on two weekends These bouts were held at ESTABROOK RECREATION CENTER

*April 21, 1995* - CGG held the Championship bouts at CLEVELAND PUBLIC HALL

*June 30, 1995* – CGG made improvements to the property totaling $18 952 00

*August 18, 1995* - CGG held its annual benefit night at NORTHFIELD PARK

*December 18, 1995* – CGG was unable to meet their obligation under the original 1995 Land Contract and defaulted on it There were no payments made to the North Point Athletic Club II, from Cleveland Golden Gloves Association, Inc in relation to the original Land Installment Contact dated January 12 1995 There were no provisions in the contract that CGG could make improvements in lieu of land contract payments

*December 26, 1995* – CGG purchased carpeting for the building for $740 79

*1995* Gross income reported on Northpoint's Form 1120S - $175 990

*January 16, 1996* – An independent appraisal of the property on South Miles established a market value of $2 050,000

Daniel A Dzina                                                                                                          Page 2



*February 14 & 23, 1996* - Trial Tournaments were held at Sportscenter  The CGG paid for the rental of the hall

*February 15, 1996* – CGG made improvements to the property totaling $93,755 04

*March 1 & 2, 1996* - CGG semi-finals are held at Sportscenter  The CGG paid for the rental of the hall

*March 8, 1996* - Championship bouts were held at Sportscenter

*May 15, 1996* – CGG made improvements to the property totaling $51,515 39

*June 1, 1996* - CCG entered into a second Land Contract with Northpoint Athletic Club II, Inc dated June 1, 1996  At this time Dzina was still the sole owner of Northpoint and was acting in the capacity of President for CGG  The purchase price of the property was lowered to $477,000 and the monthly payments were lowered to $6 172 26  The portion of the building that this contract covered was 25,789 square feet

In the second Land Contract the purchase price was changed from $2,000 000 to $477 000 plus interest of 9 5%  CGG was only purchasing a portion of the building in this second Land Contract  There was no supporting documentation provided to show that this transaction was conducted using Fair Market Value prices and interest rates  The following information was once again included in the document

> The parties acknowledge that Buyer was granted possession of the Premises on January 1, 1996 in order to commence renovation of the Premises  Buyer agrees to bear the entire cost and expense of the renovation in lieu of providing Seller with a down payment on the purchase price, and in consideration of Seller granting Buyer possession of the premises without payment of rent, taxes or insurance until June 1, 1996  Should Buyer default hereunder and Seller be required to exercise any of its rights under Paragraph 25 below all of the renovations shall be considered part of the real property and belong to Seller

It should be noted that this particular contract was signed by Dan Dzina as President of Northpoint Athletic Club II, Inc while he was also the President of CGG  Matthew Ging signed as 2nd Vice President for CGG

The only copy of this contract in our possession was neither witnessed nor notarized

*June 14, 1996* - CGG hosted the Interstate Challenge  CGG paid for the rental of the hall

*August 15, 1996* – CGG made improvements to the property totaling $19 814 39

*September 27, 1996* - CGG's annual benefit is held at NORTHFIELD PARK

*November 15, 1996* – CGG made improvements to the property totaling $34 004 91

*1996* – There were $74 678 85 of repairs expense to the building  It appeared as if they classified some of the improvements as repairs

*December 5, 1996* – CGG defaulted on the ' Second Land Contract

*December    1996* – Donation (Full?)    6 to CGG from Northpoint Athletic Club II, Inc to CGG  This donation was shown    a C) ru.bl(  c( c  ation and a deduction was taken on Northpoint's Form 1120S

*1996* - Gross rental income reported on North Point's Form 1120S related to South Miles property - $217 538

*March 28, April 4, and April 11, 1997* - CGG Tournament Trials were held at Sportsplex Sportscenter  CGG paid for the rental of the hall

*April 17, 1997* - Championship bouts were held at the CLEVELAND CONVENTION CENTER

Daniel A. Dzina                                                                                                              Page 3



*1997* – CGG's annual fundraising benefit was held at NORTHFIELD PARK

*1997* – Donation of $98,738 to CGG from Northpoint Athletic Club II, Inc Of this amount, a check dated March 25, 1997, was written by Northpoint to Nannicola, Inc (a bingo supplier) in the amount of $56,958 06 for delinquent payment of CGG's account Thus $98,738 showed up on Northpoint's Form 1120S as a charitable contribution.

The repairs account for 1997 totaled $29,835 There were no invoices to substantiate these expenses

Upon review of the invoices related to the "capital improvements and repairs/maintenance" the majority of the invoices failed to detail what work was done in relation to the payments made by CGG The books and records just showed the amounts paid for the above expenses and to whom they were paid

*July 23, 1997*- Northpoint sold the property for $2,154 000 to the Cleveland Sportsplex, LTD The terms of the actual sale are under seal

*1997* - Gross rental income on Northpoint's Form 1120S related to South Miles - $145 863

*1996 and 1997* - The organization made numerous improvements to the property located at 18909 South Miles road In 1996 and 1997 they spent $290 720 58 improving the building The first six months of 1996 CGG classified their expenses to fix up the property as capital improvements CGG subsequently began classifying them as repairs The Service is aware that Northpoint did in fact fund a substantial amount of the improvements to the facilities both prior and after the "purchase" of the property by CGG

There were no payments made to the Northpoint Athletic Club II, from Cleveland Golden Gloves Association, Inc in relation to the original Land Installment Contact dated January 12, 1995

CGG provided the Service with some invoices related to the expenses for improving and repairing the property for the 1995 & 1996 years These invoices basically gave the name of the contractor and the amount paid There was no documentation as to what project they were related to There was no way to tell if the invoices were for supplies and work done on the South Miles property or other properties owned by Mr Dzina. There were no indications of what work was performed where the work was performed, and what part of the building it related to, if in fact it was used for improvements to the South Miles property at all Some of the invoices had CGG as the purchaser and others had Northpoint or various individual contractors' names

CGG did not report on its Form 990 for 1995 any excess benefit transactions

## LAW

Section 4958 of the Internal Revenue Code states

(a) Initial taxes

(1) On the disqualified person There is hereby imposed on each excess benefit transaction a tax equal to 25 percent of the excess benefit The tax imposed by this paragraph shall be paid by any disqualified person referred to in subsection (f)(1) with respect to such transaction

(2) On the management In any case in which a tax is imposed by paragraph (1), there is hereby imposed on the participation of any organization manager in the excess benefit transaction, knowing that it is such a transaction, a tax equal to 10 percent of the excess benefit, unless such participation is not willful and is due to reasonable cause The tax imposed by this paragraph shall be paid by any organization manager who participated in the excess benefit transaction

(b) Additional tax on the disqualified person

Daniel A Dzina Page 4

In any case in which an initial tax is imposed by subsection (a)(1) on an excess benefit transaction and the excess benefit involved in such transaction is not corrected within the taxable period, there is hereby imposed a tax equal to 200 percent of the excess benefit involved The tax imposed by this subsection shall be paid by any disqualified person referred to in subsection (f)(1) with respect to such transaction

(c) Excess benefit transaction, excess benefit

For purposes of this section --

(1) Excess benefit transaction

(A) In general The term "excess benefit transaction" means any transaction in which an economic benefit is provided by an applicable tax-exempt organization directly or indirectly to or for the use of any disqualified person if the value of the economic benefit provided exceeds the value of the consideration (including the performance of services) received for providing such benefit For purposes of the preceding sentence an economic benefit shall not be treated as consideration for the performance of services unless such organization clearly indicated its intent to so treat such benefit

(B) Excess benefit. The term "excess benefit" means the excess referred to in subparagraph (A)

(d) Special rules

For purposes of this section --

(1) Joint and several liability If more than 1 person is liable for any tax imposed by subsection (a) or subsection (b) all such persons shall be jointly and severally liable for such tax.

(2) Limit for management With respect to any 1 excess benefit transaction, the maximum amount of the tax imposed by subsection (a)(2) shall not exceed $10 000

(e) Applicable tax-exempt organization

For purposes of this subchapter the term "applicable tax-exempt organization" means --

(1) any organization which (without regard to any excess benefit) would be described in paragraph (3) or (4) of section 501(c) and exempt from tax under section 501(a) and

(2) any organization which was described in paragraph (1) at any time during the 5-year period ending on the date of the transaction.

Such term shall not include a private foundation (as defined in section 509(a))

(f) Other definition

For purposes of this section --

(1) Disqualified person The term "disqualified person" means with respect to any transaction--

(A) any person who was, at any time during the 5-year period ending on the date of such transaction, in a position to exercise substantial influence over the affairs of the organization

(B) a member of the family of an individual described in subparagraph (A) and

(C) a 35-percent controlled entity

Daniel A Dzina                                                                                                                                   Page 5



(2) Organization manager The term "organization manager" means, with respect to any applicable tax-exempt organization, any officer, director, or trustee of such organization (or any individual having powers or responsibilities similar to those of officers directors, or trustees of the organization)

(5) Taxable period The term "taxable period" means, with respect to any excess benefit transaction, the period beginning with the date on which the transaction occurs and ending on the earliest of —

(A) the date of mailing a notice of deficiency under section 6212 with respect to the tax imposed by subsection (a)(1) or

(B) the date on which the tax imposed by subsection (a)(1) is assessed

(6) Correction. The terms "correction" and "correct" mean, with respect to any excess benefit transaction, undoing the excess benefit to the extent possible, and taking any additional measures necessary to place the organization in a financial position not worse than that in which it would be if the disqualified person were dealing under the highest fiduciary standards

## *GOVERNMENT POSITION*

During the period in question CGG was recognized as a tax-exempt organization under section 501(c)(3) of the Code Therefore, CGG is an applicable tax-exempt organization, as defined in section 4958(e)

As the First Vice-President and Executive Director Mr Daniel Dzina was in a position to exercise substantial influence over the affairs of CGG Therefore Mr Daniel Dzina was a disqualified person with respect to CGG within the meaning of section 4958(f)(1)(A) of the Code

Section 4958(c)(1)(A) of the Code provides that an excess benefit transaction is any transaction in which an economic benefit is provided by an applicable tax exempt organization, directly or indirectly, to or for use of any disqualified persons and the value of the consideration (including the performance of services) received by the organization from the disqualified person for providing such benefit

On January 12 1995, the organization entered into a Land Installment Contract with Northpoint Athletic Club Inc This contract stated the purchase price of the property would be $2,000,000 The purchase price would be payable in one hundred and twenty consecutive, equal, monthly installment payments of $24,931 04 each commencing June 1 1995 and continuing thereafter on the first day of each and every calendar month through and including May 1 2005 This land contract was signed by Dan Dzina as the owner of Northpoint (he was also the 1st Vice President and Executive Director of CGG at the time) and Anthony Hughes, the President of CGG It was witnessed and notarized Land contracts do not have to be filed in the State of Ohio

Board meetings were held on December 12 1994 and December 30 1994 to approve the purchase There is some discrepancy related to the people in attendance at these meetings The Agents received two sets of minutes from two different sources One set of minutes showed that only the Officers were present Another set of minutes showed further that were three additional individuals present at the meetings There is some doubt that these individuals were actually in attendance Having the other three individuals there would have at least given the appearance that the transactions conducted at these meetings were "Arms-Length Transactions"

Per the organization s Forms 990 for 1993 and 1994 their gross income was $38 287 and $21 515 respectively They entered into the contract on January 12 1995 There was therefore no reasonable basis established that they would in fact have the money after other expenses to make monthly land contract payments of $24 931 04 This is true even if they were planning to start up another income producing activity such as bingo Because there was no way one could predict what income if any, would arise from additional planned income producing activities one

Daniel A Dzina Page 6



could only base the reasonableness of the contract on their prior financial history The organization was anticipating receiving more funding in the future mainly from bingo rents and contributions As they had never operated a bingo game before there was no reasonable basis for them to believe that this operation would produce enough income to cover the land contract payments There were no additional grant monies pledged and the rental income they received was minimal

The main issue of this case is the fact that CGG made improvements and repairs to a building that was actually owned by Northpoint (Dan Dzina was 100% owner of Northpoint) Money was being spent on improvements and repairs of the building even after CGG defaulted on the Land Contract Dan Dzina had control of both the CGG and Northpoint Athletic Club II, Inc As the sole owner of Northpoint Dan Dzina was the only person that received an economic benefit from these improvements and repairs The transactions that were occurring during this time were not arms-length transactions and were not fair market value transactions Dan Dzina set up a land contract that CGG could in no way fulfill It is the Service s position that the land installment contracts were in fact never valid because there was no reasonable expectation that CGG could comply with the terms of the contract and in fact there were no payments made in relation to the contracts Nowhere in the contracts were provisions made for improvements in lieu of rent The only referral to this was in specific relation to improvements in lieu of the down payment and the first 6 months only of rent (this was for July 1, 1994 to December 31 1994)

It should also be noted that there was nothing definitive as to what repairs and improvements were made by CGG The documentation provided by the taxpayer basically laid out the amount paid and the person to whom it was paid to The documentation did not verify what improvements or repairs were actually done to the property located at 18909 South Miles Road There was nothing to indicate (on most invoices) how the materials were used Purchasers on the invoices varied Sometimes these purchasers were listed as other properties owned by the S Corporations of Mr Dzina As such it is unclear as to whom these purchases were ultimately made for or what the materials were used for. This documentation was therefore <u>NOT</u> deemed sufficient to contradict the Service's position

They defaulted on their initial land contract on December 18 1995 Subsequently they entered into a second Land Contract dated June 1, 1996 In the second Land Contract the purchase price was changed from $2 000 000 to $477 000 plus interest of 9 5% The monthly payments were lowered to $6 172 26 At this point they were only buying a portion of the building

It should be noted that this second land contract was signed by Dan Dzina as President of Northpoint Athletic Club II Inc while he was also the President of CGG Matthew Ging signed as 2nd Vice President for CGG The only copy of this second land contract in the Service's possession was not witnessed or notarized therefore its validity is questionable at best

In the second Land Contract it stated, should buyer default hereunder and Seller be required to exercise any of its rights under Paragraph 25 all of the renovations shall be considered part of the real property and belong to Seller

Based on the facts it appears that neither Land Installment Contract should have been considered a valid contract or Arms-Length Transactions' Both contracts appear to be skewed in favor of Dan Dzina Neither contract was set up in a manner where anyone could reasonably expect performance on the part of CGG

The contract was written up so that all renovations completed by CGG would revert to Northpoint upon the default of the land contract Dan Dzina, as sole shareholder of Northpoint was the only person who received an economic benefit from the improvement of his building Because the organization was spending its monies in 1995 - 1997 on improving the building they did not have enough funds to operate Dzina and Northpoint were giving them money to operate and then taking these ' donations as tax deductions They wouldn t have needed additional funds if they weren t renovating a building that belonged to Dzina

It is the government s position, however that because CGG was spending its monies in 1996 and 1997 on improving the building they did not have enough funds to operate Because they didn t have enough funds to operate Mr Dzina began making contributions to CGG so that CGG could operate and taking charitable deductions for them His 'contributions were in effect monies funneled through the organization to pay for improvements and repairs to the facility which was effectively owned by him at that time

Daniel A Dzina                                                                                                                                                        Page 7



Invoices provided by CGG were not properly marked by CGG to tie them into specific projects as they related to the improvement of the property Many of the invoices were only marked with the name of the contractor, the date and the amount due For example the invoices from Dunbar Contracting only show the name of the contractor, the amount and the date of services rendered There is no way of knowing if these services were provided to the property "owned" by CGG or other properties that were being renovated concurrently by Northpoint/Mr Dzina.

It should be noted that the Service is aware that Northpoint made substantial improvements to the property on its own. These improvements were made at various times prior, during and after the land contracts with CGG The Service is not stating that the total increase in valuation of the property was due to improvements made by CGG The Service is however stating that the improvements made by CGG were a contributory factor to the increase in property value The improvements were made using CGG funds and it is the Service's position that at no time did CGG ever have equitable ownership of any portion of the premises As a result, Dan Dzina (Northpoint) was the sole beneficiary of all improvements made to the property

Also as the First Vice-President and Executive Director Mr Daniel Dzina was an organization manager within the meaning of section 4958(f)(2) of the Code As the First Vice-President and Executive Director himself Mr Dzina participated in these excess benefit transactions In addition, Mr Dzina participation in these excess benefit transactions was willful and was not due to reasonable cause, within the meaning of section 4958(a)(2) of the Code

### *Conclusions*

Due to the fact that they failed to report the excess benefit transactions on their Form 990 for the 1995 year the six year statute applies to that year

Under section 4958(a)(1) of the Code there is hereby imposed on the excess benefit transactions that occurred from 1995 to 1997 between CGG and Mr Dzina a tax equal to 25% of the excess benefits as follows These taxes are payable by Mr Dzina (See Exhibit A )

| | |
|---|---|
| 1995 | $ 185 20 |
| 1996 | $68,442 15 |
| 1997 | $ 7 458 81 |

If Mr Dzina does not make correction within the meaning of section 4958(f)(6) of the Code on any of the excess benefit transactions that occurred from 1995 to 1997 between him and CGG there will hereby be imposed on these excess benefit transactions, under section 4958(b) a tax equal to 200% of the excess benefits These taxes will be payable by Mr Dzina (See Exhibit A)

| | |
|---|---|
| 1995 | $ 1 481 58 |
| 1996 | $547 537 16 |
| 1997 | $ 59 670 44 |

Under section 4958(a)(2) of the Code there is hereby imposed on the participation by Mr Dzina, an organization manager with respect to CGG in excess benefit transaction between disqualified persons with respect to CGG and CGG a tax equal to $10,000 of each excess transaction under section 4958(d)(2), is payable by Mr Dzina (See Exhibit A)

| | |
|---|---|
| 1995 | $ 74 08 |
| 1996 | $27 376 86 |
| 1997 | $ 2 983 52 |

Daniel A Dzina                                                                                                      Page 8

EXHIBIT A

Daniel Dzina
Schedule of Excess Benefit Transactions Subject to IRC 4958
Calendar Years 1995 to 1997

| Date | Excess Benefit Transaction | 1995 | 1996 | 1997 |
|---|---|---|---|---|
| 12/26/95 | Carpet | $ 740 79 | | |
| 2/15/96 | Improvement | | $ 93,755 04 | |
| 5/15/96 | Improvement | | $ 51,515 39 | |
| 8/15/96 | Improvement | | $ 19,814 39 | |
| 11/15/96 | Improvement | | $ 34,004 91 | |
| 12/31/96 | Repairs | | $ 74,678 85 | |
| 12/31/97 | Repairs | | | $ 29,835 22 |
| Total Excess Business Transactions | | $ 740 79 | $ 273,768 58 | $ 29,835 22 |
| 25% First Tier Excise Tax - IRC 4958(a)(1) | | $ 185 20 | $ 68,442 15 | $ 7,458 81 |
| 200% Second Tier Excise Tax - IRC 4958(a)(2) | | $ 1,481 58 | $ 547,537 16 | $ 59,670 44 |
| Excise Tax on Organization Manager Per IRC 4958(a)(2) | | $ 74 08 | $ 27,376 86 | $ 2,983 52 |
| Total Excise Taxes Under IRC 4958 | | $ 1,740 86 | $ 643,356 17 | $ 70,112 77 |
| Total | | | | $ 715,209 80 |

